ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| JOSÉ M. HERNAIZ CASADO<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2025RA00297 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección<br><br>Caso Núm.: GMA 500-494-25 Código-P-16<br><br>Sobre: Aplicación Retroactiva del 15% de descuento en las Compras de Comisaría |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece ante nos, José M. Hernaiz Casado (Hernaiz Casado o recurrente), quien se encuentra confinado en la Institución Correccional Guayama 500 y recurre por derecho propio *in forma pauperis*. En su recurso, Hernaiz Casado nos solicita que revisemos una *Respuesta del Área Concernida [...]* emitida el 23 de julio de 2025, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (recurrida). Mediante dicha determinación, se le informó que "verificada la cuenta del miembro de la población correccional en referencia, no consta descuento alguno por concepto del 15% de descuento bajo el acuerdo", por lo que refirieron el asunto a otra división para verificación del caso.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

## I.

Con fecha del 2 de junio de 2025, el recurrente, José M. Hernaiz Casado, presentó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación. Alegó que, a pesar de haber estado confinado desde el 1997, nunca le fue aplicado el beneficio del quince por ciento (15%) de descuento en las compras realizadas a través de la Comisaría. Por ello, solicitó que se le aplicara dicho beneficio retroactivamente.

Así las cosas, el 23 de julio de 2025, pero notificada a Hernaiz Casado el 5 de agosto de 2025, la División de Remedios Administrativos emitió la *Respuesta del Área Concernida [...]*. En esta, la Sra. Maritza Valentín Lugo, Técnico Sociopenal, indicó lo siguiente:

> Verificada la cuenta del miembro de la población correccional en referencia, no consta descuento alguno por concepto del 15% de descuento bajo el acuerdo. Se refiere el caso a la Sra. Olga Custodio, analista de sistemas de contabilidad y encargada de la región sur para verificación del caso, debido a que es la persona autorizada en verificar los listados y proveer los mismos sobre la población correccional bajo ABCD.

En desacuerdo, el 5 de agosto de 2025, Hernaiz Casado presentó una *Solicitud de Reconsideración* ante la División de Remedios Administrativos. En su escrito, reiteró su petición de que le fuera aplicado el quince por ciento (15%) de descuento en las compras realizadas a través de Comisaría.

En respuesta, el 27 de agosto de 2025, pero notificada el 3 de septiembre de 2025, la División de Remedios Administrativos emitió una *Resolución de Reconsideración* mediante la cual le informó al recurrente que, luego de verificar el listado de beneficiarios admitidos en el Sistema Correccional, su nombre no figuraba como parte del mismo.

Inconforme, el 2 de octubre de 2025[1], el recurrente instó un recurso de revisión judicial mediante el cual alegó la comisión de los siguientes errores:

> Erró la Administración de Corrección y Rehabilitación al no aplicarle al recurrente el 15% de descuento en las compras realizadas a través de Comisaría, ya que claramente indica en el Documento Anejo II pág. (2) que verificaron la cuenta del recurrente y nunca le fue aplicado dicho beneficio del 15% de descuento.

> Erró la Administración de Corrección y Rehabilitación y el personal asignado al área de cuenta, Sra. Olga Custodio, analista de sistemas de contabilidad y encargada de la región sur, al no aplicarle al recurrente el 15% de descuento en las compras realizadas a través de Comisaría[,] teniendo claro que el recurrente nunca se ha beneficiado de dicho beneficio y teniendo conocimiento el personal que "en la propuesta de transacción privada y beneficios en cuanto al Departamento de Corrección se refiere" cita: "se le prohíbe al Estado Libre Asociado de Puerto Rico cobrar más de 85% de los precios establecidos para suministro disponibles en las comisarías operadas por el Departamento de Corrección y Rehabilitación". Véase, Documento Anejo V pág. (8).

> Erró la Administración de Corrección y Rehabilitación y el personal asignado al área de cuenta, Sra. Olga Custodio, analista de sistemas de contabilidad y encargada de la región sur, al no aplicarle al recurrente el 15% de descuento, teniendo el conocimiento personal que dicho beneficio [comenzó] a partir del 18 de abril de 2017 y finalizaba el 18 de abril del 2022, lo cual al recurrente solicitar el beneficio por el cobro prohibido que estaba haciendo la Administración de Corrección del 85% en las compras, pues tenían que aplicar dicho beneficio al recurrente.

> Erró la Administración de Corrección y el personal asignado del área de cuenta al no aplicar el beneficio del 15% de descuento al recurrente, teniendo conocimiento que el recurrente aplica a dicho beneficio del 15% ya que no hay fecha [límite] para solicitar el beneficio del 15%, solamente las fechas indicaban el comienzo de aplicación y hasta que fecha le aplicarían al confinado que lo solicitara. Véase, Anejo V pág. (8). Documento de la Administración de Corrección, firmado por Janet Rivera Rosado, Negociado de Instituciones Correccionales.

Examinado el recurso de epígrafe este Tribunal emitió una *Resolución* el 29 de octubre de 2025, concediéndole un término de

---

[1] Dicho recurso fue recibido en la Secretaría de este Tribunal el 14 de octubre de 2025 acompañado de una *Solicitud y Declaración Para Que Se Eximan de Pago de Arancel por Razón de Indigencia.*

veinte (20) días a la parte recurrida para que presentara su posición al recurso. El 14 de noviembre de 2025, el Departamento de Corrección y Rehabilitación presentó, por conducto de la Oficina del Procurador General de Puerto Rico, un *Escrito en Cumplimiento de Resolución.*

Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión judicial de las determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 377 (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). A su vez,

posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra*; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas,* 214 DPR 633, 648 (2024); *OCS v. CODEPOLA,* 202 DPR 842, 852 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales

no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo,* U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez v. Consejo de Titulares, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 214 DPR 473, 484 (2024); *González Segarra et al. v. CFSE*, 188 DPR 252 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra*; Torres *Rivera v. Policía* de PR, *supra,* pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación

de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

## B. *Caso Morales Feliciano, et al v. Alejandro García Padilla, Civil Núm. 79-4 (PJB-AKJ)*

En el año 2015, las partes en el caso *Carlos Morales Feliciano, et al v. Alejandro García Padilla*, Civil Núm. 79-4 (PJB-AKJ), alcanzaron unos acuerdos de transacción no monetarios que, una vez aprobados, dieron por finalizada la fase de daños del pleito. Como parte de dichos acuerdos, se concedieron una serie de beneficios a los miembros de la población correccional que, en el pasado, se vieron afectados por las condiciones de las instituciones carcelarias.[2] Entre ellos se prohibía que el Estado Libre Asociado de Puerto Rico cobrara más del 85% de los precios establecidos en la lista de precios para suministros disponibles en las comisarías operadas por el Departamento de Corrección y Rehabilitación.[3] Para acogerse a estos beneficios, los miembros de la población correccional cualificados debían radicar una solicitud de beneficios dentro del período comprendido entre el 15 de mayo de 2016 y el 15 de noviembre de 2016.[4]

Conforme a los acuerdos, la elegibilidad de los confinados para recibir los beneficios dependía del período de tiempo en que estuvieron encarcelados y del lapso de tiempo que duró dicha encarcelación. A tales efectos, se establecieron las siguientes categorías o grupos:

> Grupo A: Los reclamantes cualificados encarcelados y excarcelados desde el 1980 al 1987, recibirán los beneficios por 10 años.

---

[2] Véase, Orden Ejecutiva Núm. OE-2016-047.
[3] Véase, Apéndice del Departamento de Corrección, Anejo I.
[4] *Íd.*, Anejos II y III.

Grupo B: Los reclamantes cualificados encarcelados y excarcelados desde el 1988 al 1994, recibirán los beneficios por 5 años.

Grupo C: Los reclamantes cualificados encarcelados y excarcelados desde el 1995 al 2000, recibirán los beneficios por un (1) año.

Grupo D 1: Los reclamantes cualificados encarcelados después del 1980 y antes del 1987 por menos de 6 meses, pero más de cuarenta y ocho (48) horas recibirán los beneficios por un (1) año.

Grupo D 2: Los reclamantes encarcelados cualificados después del 1987 por menos de 6 meses, pero más de cuarenta y ocho (48) horas recibirán beneficios por seis (6) meses.

Grupo E: Los reclamantes cualificados bajo los Grupos A al D que estén confinados actualmente recibirán los beneficios en el III L conforme a la cantidad del tiempo asignada para los Grupos A al D.[5]

En cumplimiento con lo anterior, el Departamento de Corrección y Rehabilitación colaboró con *Correctional Health Services Corporation* para orientar a los miembros de la población correccional que se encontraban encarcelados durante el período de solicitud de los beneficios. Como parte del proceso, dicha corporación fue responsable de emitir una tarjeta identificativa —conocida como la Tarjeta ABCD— a cada beneficiario, según el grupo al que perteneciera.

**III.**

En su recurso, Hernaiz Casado solicita nuestra intervención para que revisemos su reclamo relacionado con la concesión del descuento de quince por ciento (15%) en las compras de Comisaría, conforme disponía el acuerdo de transacción privada en el caso *Morales Feliciano, et al. v. Alejandro García Padilla, et al.,* supra. Alega que no figura en la lista de beneficiarios de la Tarjeta ABCD debido a que nunca fue orientado sobre la existencia de dicho beneficio y sostiene, además, que era deber de la agencia verificar las cuentas de los miembros de la población correccional y orientar a aquellos aún no gozaban del beneficio para que les fuera aplicado.

---

[5] *Íd.*, Anejos I, II y III.

Por ello, solicita que ordenemos a la recurrida aplicarle el referido descuento de forma retroactiva a su cuenta de Comisaría.

Por su parte, el recurrido, por conducto de la Oficina del Procurador General de Puerto Rico, sostiene que la División de Remedios Administrativos atendió adecuadamente el remedio ante su consideración. Señala que, los acuerdos alcanzados en virtud del caso *Morales Feliciano, et al. v. Alejandro García Padilla, et al.,* supra, prohibían cobrar más del ochenta y cinco por ciento (85%) en las compras de Comisaría únicamente a aquellos miembros de la población correccional que hubiesen solicitado la Tarjeta ABCD dentro del término establecido. Manifiesta que dicho término venció sin que el recurrente solicitara el beneficio, por lo que concluye que la actuación de la División de Remedios Administrativos fue conforme a derecho. *Le asiste la razón.*

Según surge del expediente ante nuestra consideración, la División de Remedios Administrativos, tras referir el asunto a la Sra. Olga Custodio, analista de sistemas de contabilidad y encargada de la región sur, advino en conocimiento de que el recurrente no figuraba en el listado de beneficiarios de la Tarjeta ABCD. Cabe destacar que, el propio recurrente incluso reconoce que nunca solicitó dicho beneficio dentro del término dispuesto para ello.

Por consiguiente, si bien es cierto que, como resultado de los acuerdos transaccionales en el caso *Morales Feliciano, et al. v. Alejandro García Padilla, et al.,* supra, se concedieron una serie de beneficios a los miembros de la población correccional encarcelados entre los años 1980 y 2000, dichos beneficios estaban condicionados a que cada confinado solicitara oportunamente dentro del período establecido.

Así pues, resulta un hecho incontrovertido que Hernaiz Casado nunca solicitó ser beneficiario de la Tarjeta ABCD. El acuerdo transaccional no dispuso la concesión automática del

beneficio y, además, surge del expediente que la recurrida brindó orientaciones sobre la disponibilidad del mismo. En consecuencia, la omisión del recurrente de solicitar dicho beneficio oportunamente impide su reclamo de forma retroactiva. En conclusión, no erró la División de Remedios Administrativos al emitir el dictamen recurrido, por lo que procede confirmar su determinación.

**IV.**

Por los fundamentos antes esbozados, *confirmamos* la determinación emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones